# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. LLOYD NORMAN, III, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE READING SCHOOL DISTRICT | : | |
| Defendant. | : | No. 08-4266 |

## M E M O R A N D U M

**SITARSKI, M.J.**                                                           **March 30, 2010**

Currently pending before the Court is a motion for summary judgment filed by

Defendant Reading School District.  For the following reasons, the motion will be GRANTED.

## I.        INTRODUCTION

Plaintiff, Dr. Lloyd Norman, III ("Plaintiff"), initiated this lawsuit against his employer,

the Reading School District ("RSD"), on September 4, 2008, alleging that he has been denied

various employment opportunities throughout the school district as a result of race

discrimination, age discrimination, and in retaliation for filing a complaint with the Pennsylvania

Human Rights Commission ("PHRC").  Plaintiff alleges that the RSD has acted in violation of

Title VII of the Civil Rights Act of l964, as amended by the Civil Rights Act of 1991, as

protected by Section 1981(a), Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§621, et seq., and the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §§951-963.

This matter was initially assigned to District Court Judge Juan R. Sanchez but on May 6,

2009, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge

under 28 U.S.C. 636(c) and Fed.R.Civ.P. 73.  (Doc. No. 9).  This matter was then transferred to

me by Judge Sanchez.  *Id.*   Thereafter, on November 30, 2009, Defendant filed the instant

Motion for Summary Judgment.  (Doc. No. 21).

Defendant moves for summary judgment on the grounds that Plaintiff "offers only

speculation in support" of his claims for race and age discrimination, and "cannot demonstrate a

causal link between the past [PHRC] complaint and the events at issue in this action."  On

January 8, 2010, Plaintiff filed its opposition to Defendant's motion and on January 20, 2010,

Defendant filed a reply.  (Doc. No. 31, 34).  Accordingly, this matter is now ripe for disposition.


## II.    BACKGROUND

Plaintiff is a 58 year old African American male.  Pl.'s Resp. to Mot. for Summ. J. at 3.

Plaintiff graduated from Reading High School in 1968, and in 1973 received a bachelors degree

in secondary education, with a major in history from Kutztown State College.  Pl.'s Dep. at 10-

11.  In 1985, Plaintiff was awarded a master's degree in special education from Temple

University, and in 1995, Plaintiff was awarded a doctoral degree in educational administration

from Temple.  *Id.*  Plaintiff has done post graduate work at Bryn Mawr College and holds a

Superintendent's Letter of Eligibility.[1]  *Id.*  Plaintiff also teaches a class in educational

administration as an adjunct professor at Alvernia University in Reading, Pennsylvania.  Pl.'s

Resp. to Mot. for Summ. J. at 3.

Plaintiff began his career in education in 1973 with the Philadelphia School District.

---

[1]  A Letter of Eligibility "is awarded after completion of a certificate program in which
educational leaders demonstrate their knowledge, disposition, and performance of the six
standards for school leaders prescribed by the Interstate School Leaders Licensure Consortium
for the Commonwealth of Pennsylvania."  Pl.'s Resp. to Mot. for Summ. J. at 3.

Pl.'s Dep. at 12-13. Plaintiff worked in the Philadelphia School District, primarily as a teacher in special education and social studies, for approximately 24 years. *Id.* In 1997, Plaintiff joined the RSD. *Id.* at 3-4. Plaintiff initially was hired as a teacher, but was quickly promoted to the position of Dean of Students during his first year with the RSD. *Id.* The next year, Plaintiff began the school year as the lead teacher at the Star Building, the RSD's disciplinary school. *Id.* By December of that year, Plaintiff was appointed to the position of Vice Principal at Northwest Middle School. Pl.'s Dep. at 11-12. Thereafter, in June 1998, Plaintiff was appointed to the position of Vice Principal at Reading High School, the only high school located within the RSD. *Id.* Plaintiff remained in this position for 10 years, until June 2008. *Id.* In June 2008, Plaintiff was appointed to the position of Principal at Southwest Middle School, a position that Plaintiff still holds today. *Id.*

On June 22, 2000, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"). Pl.'s Resp. to Mot. for Summ. J. at 4; Pl.'s Amended Comp. at ¶13. In that complaint, Plaintiff alleged that the RSD had discriminated against him based upon his race by attempting to reduce his salary without justification. *Id.* Ultimately, Plaintiff came to an agreement with the RSD, and the complaint with the PHRC was withdrawn before any action was taken. *Id.* The issues raised by the PHRC complaint are not directly at issue in this lawsuit.

Since Plaintiff's salary dispute with the RSD in 2000, Plaintiff has received a salary increase every year since 2001.

In 2001, Plaintiff's salary was $74,672.00

In 2003, Plaintiff's salary was $79,500.84.

In 2004, Plaintiff's salary was $83,475.88.

In 2005, Plaintiff's salary was $85,980.00.

In 2006, Plaintiff's salary was $88,559.40.

In 2007, Plaintiff's salary was $97,414.40.

In 2008, Plaintiff's salary was $100,336.83.

In 2009, Plaintiff's salary was $105,000.00.

Plaintiff Dep. at 14-17.

During his time with the RSD, Plaintiff has unsuccessfully sought and applied for numerous positions within the school district. *Id.* The positions at issue in the instant matter include: (1) Principal of Southern Middle School; (2) Principal of Northeast Middle School; (3) Director of Special Education; (4) Principal of Southwest Middle School; (5) Director of Elementary Education; and (6) Director of Secondary Education. *Id.*

RSD School Superintendent Thomas Chapman testified that the process for obtaining one of these jobs with the RSD involves first making an application with the school district. Chapman Dep. at 16. Then, based upon review of these applications, some applicants are scheduled for an interview. *Id.* Chapman testified that the interviewers are typically individuals within the school district that have direct supervisory responsibility over the potential job opening, or individuals that will interact with the individual ultimately hired. *Id.* Director of Human Resources Anthony Georeno testified that he generally reviewed the applications and submitted a list of recommended candidates to the Superintendent. Georeno Dep. at 40. Georeno stated that he would complete this list after determining whether or not the applicant had the proper certifications and the requisite level of experience for the position to be filled. *Id.* Georeno testified that to his knowledge Plaintiff's name had never been left off an

4

applicant list forwarded to the Superintendent. *Id.* at 41.

During the interview, the candidates are evaluated using an Employment Rating Form. Georeno Dep. at 44-45. Each of the three interviewers fills out this form, which contains 10 categories in which the job candidate is evaluated and given a score ranging from .1 to 1.0 in each category. *Id.* at 45-46. A perfect score from an individual evaluator is 1.0, and an overall perfect score based upon all three evaluations is 30. After the interview process is completed, the scores for each candidate are tabulated. Based upon these scores, a pool of applicants are provided to Superintendent Chapman. Georeno Dep. at 49-52. Superintendent Chapman then interviews the potential candidates, and makes a recommendation to the Reading School Board. Chapman Dep. at 108. The School Board then votes on whether or not to accept Superintendent Chapman's recommendation. *Id.*

The Reading School Board is made up of nine publicly elected members who serve in staggered four year terms. McCree Dep. at 11-12. The decision whether to extend a job offer to a particular candidate ultimately rests with the Reading School Board. Chapman Dep. at 108-110.

III.     **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An

issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party.  *Id.* at 248-29.  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) *(citing U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962));  *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions.  *Trap Rock Indus. v. Local* 825, 982 F.2d 884, 890 (3d Cir. 1992);  *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Anderson*, 477 U.S. at 257.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden.  *Celotex Corp.*, 477 U.S. at 322-23.

## IV.    PLAINTIFF'S CLAIMS

Plaintiff alleges that he was discriminated against on the basis of race and age in violation of Title VII, Section 1981, and the PHRA.[2]  "Title VII and the PHRA both prohibit an employer from engaging in race . . . discrimination against an employee." *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 318 (3d Cir.2000).  To prevail on a claim for discrimination, a plaintiff must show that "the protected trait actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 .(2000).  This showing that a protected trait had a determinative influence on the decision of the employer can be made either through the use of direct evidence or circumstantial evidence.  *Id.*; *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

A claim for discrimination based upon direct evidence must meet the standard set out in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  Under *Price Waterhouse* direct evidence is evidence that would be "sufficient to allow the jury to find that decision makers placed a substantial negative reliance on Plaintiff's age [and or race]."  *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002).  This requires that a plaintiff present evidence of "discriminatory attitudes" that were causally related to the challenged employment decision  *Glanzman*, 391 F.23

---

[2]  The PHRA "is construed consistently with interpretations of Title VII."  *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."); *see also Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996) (PHRA is interpreted in accord with Title VII).  The standards under Title VII and Section 1981 are also identical.  *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 826 n. 3 (3d Cir.1994) (claims under Title VII, section 1983, and section 1981 analyzed under the same standard). Thus, Plaintiff's claims will be analyzed under Title VII, and the conclusions will apply equally to his PHRA and Section 1981 claims. *See Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 317 n. 3 (3d Cir.2000).

at 512.  If direct evidence is presented the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have taken the same action even if it had not considered Plaintiff's age or race. *Id.* at 338 (citing *Price Waterhouse*, 490 U.S. at 265-266).

If there is no direct evidence of discrimination a plaintiff may present circumstantial evidence of discrimination.  *Fuentes*, 32 F.3d at 764.  If circumstantial evidence is presented a plaintiff must satisfy the standard set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);  *Embrico v. U.S. Steel Corp.*, 245 F. App'x.  184, 187 (3d Cir. 2007); *See Glanzman*, 391 F.3d at 512.  In the instant matter, Plaintiff has not presented direct evidence of discrimination consequently, Plaintiff must proceed under the *McDonnell Douglas* framework.[3]  *McDonnell Douglas* requires that a plaintiff show that he is (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated persons who are not members of the protected class were treated more favorably.  *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).

If a plaintiff is able to meet the *McDonnell Douglas* standard the burden of production

---

[3]  In *Price Waterhouse*, the Supreme Court stated that direct evidence of discrimination must demonstrate that:

> decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision .... [T]he plaintiff must produce evidence sufficient to show that an illegitimate criterion was a substantial factor in the particular employment decision such that a reasonable factfinder could draw an inference that the decision was made "because of" the plaintiff's protected status. Only then would the burden of proof shift to the defendant to prove that the decision would have been justified by other, wholly legitimate considerations.

*Price Waterhouse*, 490 U.S. at 277.  A plaintiff confronts a "high hurdle" in attempting to prove discrimination by direct evidence.  *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002) (*quoting Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir.1998)).

shifts to the employer who must come forward with a legitimate, nondiscriminatory reason for the adverse employment decision. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318-19 (3d Cir. 2000) (*citing Tx. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981)). If a defendant offers a legitimate, non-discriminatory reason for their actions, Plaintiff survives summary judgment by "present[ing] sufficient evidence to raise a genuine issue of fact as to whether the defendant's proffered reasons were not its true reasons for the challenged employment action." *Stewart v. Rutgers*, 120 F.3d 426, 433 (3d Cir.1997); *see also Jones*, 198 F.3d at 413. Thus, a plaintiff survives summary judgment by proffering "admissible evidence[ ] that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason," or by "pointing to evidence in the record which allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Jones*, 198 F.3d at 413.

If the defendant meets this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination. *Jones*, 198 F.3d at 410 (*citing Burdine*, 450 U.S. at 252-53). To establish pretext, a plaintiff must point to some evidence from which a fact finder could either: (1) disbelieve defendant's articulated legitimate business reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employers action." *Fuentes,* 32 F.3d at 764. To discredit a legitimate reason proffered by an employer, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's preferred legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at

765.

In attempting to discredit a defendant's proffered reasons, however, a plaintiff cannot simply show that the defendant's decisions were wrong or mistaken. The inquiry is whether the defendant was motivated by discriminatory animus, not whether the defendant was wise, shrewd, prudent or competent. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir.1996) ("federal courts are not arbitral boards ruling on the strength of the 'cause' for the [adverse employment action]. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination."); *see also Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir.1992). Therefore, "the plaintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller,* 130 F.3d at 1109.

Significantly, the ultimate burden of persuasion always remains with the plaintiff, and the ultimate question is whether, after all the evidence is in, the plaintiff has proven his case by a preponderance of the evidence. *Aikens*, 460 U.S. at 711. Even during the pretextual analysis, the employer has no burden to prove that its proffered reasons are true; rather, the plaintiff must prove by a preponderance of the evidence that the proffered reasons are pretextual. *Burdine*, 450 U.S. at 256.

**A.    Race Discrimination**

Plaintiff first alleges that he was denied two positions within the RSD on the basis of race: the principalship of Southern Middle School, and the position of Director of Special Education for the RSD.

**1.    Principal of Southern Middle School**

In January 2007, Plaintiff learned that Joel T. Brigel, Jr., a 35 year old white male, had been promoted to the position of Principal of Southern Middle School. Pl.'s Resp. to Mot. for Summ. J. at 6. Mr. Brigel was a former Assistant Principal at Southern Middle School, and he was appointed to this position by Superintendent of Schools Thomas Chapman, pursuant to his authority to appoint school administrators. Chapman Dep. at 71.[4]

Plaintiff complains that this position was not advertised and/or posted, even though past practice had been to post vacancies such as this. Pl.'s Resp. to Mot. for Summ. J. at 6. Plaintiff further claims that the posting of administrative positions is required under the RSD's own policy manual. *Id.* at 8. Plaintiff argues that, because this position was not posted, he was denied his right to apply for it. Further, Plaintiff states that it was well known throughout the RSD that he was interested in promotional positions; therefore, even though he was not permitted to apply for this position, he should have been considered nonetheless. Pl.'s Resp. to Mot. for Summ. J. at 32. Plaintiff asserts that because he was not considered for this position, and because the position was awarded to Mr. Brigel under the "prerogative" of the Superintendent of Schools, his failure to be awarded this position "is, in fact, discriminatory animus." *Id.*

Plaintiff argues that the appointment of Mr. Brigel without posting or interviewing for the position constitutes evidence of race discrimination. *Id.* Plaintiff claims that "it was no secret" that he was seeking a promotion with the RSD, but when this opportunity arose, Superintendent Chapman chose to ignore his academic and professional experience, and appoint a less qualified

---

[4] Superintendent Chapman testified that pursuant to his contract with the school district, he has the "right to assign people, administrative people in the district in the manner [he] thinks best serves the district." Chapmand Dep. at 71.

white male instead. *Id.* at 33. However, the extent of Plaintiff's argument is that he should have been awarded the position of principal of Southern Middle School because he had "substantially more educational and professional experience than Mr. Brigel. . . [his] academic achievements far exceeded Mr. Brigel's. . . [he] possessed a doctorate in education from Temple University while Mr. Brigel only had a Master's degree. . . [he] had a superintendent's letter of eligibility whereas Mr. Brigel only possessed a principal's certificate. . . [and he] taught Mr. Brigel in education administration class at Alvernia College, where he serves as an Adjunct Professor of Educational Administration." *Id.* at 31-32.

Analyzing Plaintiff's claims under *McDonnell Douglas,* I conclude that Plaintiff has established a prima facie case of race discrimination regarding the position of Principal of Southern Middle School. Plaintiff, an African American male, is a member of a protected class; he was qualified for the position that was ultimately awarded to another; and this position was awarded to a white male. *See Jones*, 198 F.3d at 410-11.

However, this is not the end of the inquiry. In order to survive summary judgment on this claim, Plaintiff must "present sufficient evidence to raise a genuine issue of fact as to whether the defendant's proffered reasons were not its true reasons for the challenged employment action." *Stewart*, 120 F.3d at 433.

Defendant's proffered reason for not appointing Plaintiff to the position of Principal at Southern Middle School is that this position was filled pursuant to the Superintendent's authority to appoint administrative positions within the RSD. Defendant further states that the job was awarded to Brigel because he "had previously been an Assistant Principal at Southern and when its principal opening came up . . . , [School Superintendent] Chapman felt that Brigel would be a

12

good fit to return to that school where he had previously been a highly effective Assistant Principal." *See* Def.'s Mot. for Summ. J. at 12. Finally, Defendant argues that Plaintiff's claim should fail because he cannot "identify any other ways in which race would have played a role in him being denied the position of Principal of Southern." Def.'s Mot. for Summ. J. at 12.

Plaintiff asserts that the fact that he was not considered for this position and the manner in which this position was awarded, under the "prerogative" of the Superintendent of Schools "is, in fact, discriminatory animus." *See* Pl.'s brief at 32. However, Plaintiff does not put forth any evidence in support of his claim that he was denied the job of Principal at Southern Middle School based upon his race. Plaintiff simply states that he "believes that the decision to not post this [position], as well as other positions is an intentional act of discrimination, since the Reading School District would not have to explain in a public forum its non-selection of the most qualified employee on staff." Pl.'s Resp. to Mot. for Summ. J. at 8. Plaintiff also states that "Defendant has not set forth a non-discriminatory reason for the non-selection of [Plaintiff]. *Id.*

Plaintiff has not presented evidence sufficient to raise a genuine issue of fact as to whether the defendant's proffered reasons for not awarding him the position of Principal of Southern Middle School were not its true reasons for the challenged employment action. *Stewart*, 120 F.3d at 433; *see also Jones*, 198 F.3d at 413.

As a preliminary matter, I disagree with Plaintiff's contention that Defendant has failed to set forth a non-discriminatory reason for Plaintiff's failure to be appointed to this position. Defendant has stated that Brigel was awarded this position based upon his previous experience at Southern Middle School, and because he had been successful at that school in the past. Moreover, the question is not whether Defendant selected the "most qualified employee on staff"

but whether the decision not to hire Plaintiff for this position was motivated by discrimination. *Keller*, 130 F.3d at 1109. Here, Plaintiff has not presented any evidence from which a fact finder could disbelieve RSD's articulated legitimate business reasons or believe that discriminatory animus was more likely than not a motivating cause in awarding this position to Birgel. *Fuentes*, 32 F.3d at 764. Consequently, Plaintiff had not proven by a preponderance of the evidence that Defendant was motivated by racial animus and this claim will be dismissed. *Aikens*, 460 U.S. at 711.

## 2. Director of Special Education

Similarly, Plaintiff argues that he should have been awarded the position of Director of Special Education for the RSD because his academic achievements and professional experience far exceeded those of Mark McIntyre, the individual ultimately awarded the position. Pl.'s Resp. to Mot. for Summ. J. at 33. McIntyre is a white male who was 44 years old at the time he was hired. *Id.* at 9.

Plaintiff applied for the position of Director of Special Education in March, 2007. *Id.* This position is a Central Office administrative position within the RSD. *Id.* Eight individuals, including Plaintiff, were chosen to participate in the interview process for this position. Plaintiff was interviewed by Director of Human Resources Anthony Georeno, Coordinator of Student Services Yolanda Smith, and Director of Student Services Rose Merrell James. *Id.* at 10; *See* Employment Interview Rating Form, attached as Pl.'s Ex. "Q ". The rating forms completed by the interviewers show that Plaintiff received a score of 7.8 out of 10.0 from Georeno, 9.4 out of 10.0 from Smith, and 8.4 out of 10.0 from Merrell James for a total of score 25.6. *Id.* McIntyre received scores of 9.2 from Georeno, 1.0 from Smith, and 1.0 from Merrell James for a total of

14

29.2.  *Id.*

Goreno testified that Plaintiff was not selected for this position because he had performed poorly in his interview.  Goreno Dep. at 72.  Specifically, Goreno stated that Plaintiff had appeared to lack knowledge regarding the "laws and regulations that are particular to special education."  *Id.* at 7.  Goreno further testified that it was "apparent from the questioning that [Plaintiff] didn't have the background that he needed" to serve as Director of Special Education.  *Id.*  Goreno made a point to express his belief that Plaintiff did not lack the ability to perform this particular job, but that it was an area of the educational field that Plaintiff had not been involved in for a long time, and things had changed in the interim.  *Id.*  Goreno stated that although Plaintiff had experience in the field of special education, he had not kept up with changes in the field, as had some of the other applicants with more recent experience.  *Id.*

Merrell James noted that Plaintiff "needs to read or have service in IDEA."[5]  *See* Merrell James Employment Interview Rating Form, attached as Def.'s Ex. "Q ".  Merrell James stated that she did not feel that Plaintiff was the best candidate for this position because "[d]uring the interview process [he] was asked several questions including those pertaining to Compliance Monitoring and Least Restrictive Environment (LRE).  The Reading School District had been out of compliance with the Least Restrictive Environment mandates for over two years.  One of the goals of the district was to successfully meet the directives of the Pennsylvania State Education Department (PDE) in LRE standards.  [Plaintiff] failed to indicate knowledge of programming

---

[5]  IDEA refers to the Individuals with Disabilities Education Act (IDEA).  IDEA seeks to ensure services to children with disabilities throughout the United States, and governs how states and public agencies provide early intervention, special education and related services to eligible infants, toddlers, children and youth with disabilities.

such as inclusive practices and how he would go about carrying out these mandates." *See* Letter of Dr. Rose Merrell James, attached as Def.'s Ex. "F". Merrell James further stated that McIntyre was selected as Director "based on the candidate's years of experience as a Director of Special Education in another district, vision expressed on inclusive practices for the district, and more thorough and complete answers to questions presented during the interview process." *Id.*

Plaintiff has established a prima facie case under *McDonnell Douglas*. Defendant has proffered that its reasons for not awarding Plaintiff the position Director of Special Education are based upon the interview conducted by Georeno, Smith, and Merrell James and their evaluation of Plaintiff's strengths and weaknesses. As noted above, the interviewers awarded Plaintiff a score of 25.6 while McIntyre was awarded a score of 29.6. Plaintiff argues, however, that these scores and, in fact, the entire interview process was a "sham." Pl.'s Resp. to Mot. for Summ. J. at 33-34. Plaintiff states that it was "common knowledge" that a psychologist (McIntyre) had already been selected for the position of Director of Special Education, and he was aware of this fact before he interviewed for the position *Id.* at 33. Plaintiff argues that "the solely subjective interview process was used to provide some appearance of propriety, when, in fact, it was merely a cover for the pre-determination." *Id.* at 33-34.

Plaintiff fails to provide any evidence in support of this assertion. Again, Plaintiff focuses his argument on the fact that his qualifications and experience exceeded those of McIntyre and thus "he should have received the position." Pl.'s Resp. to Mot. for Summ. J. at 10-11. However, as noted above, a reviewing court will not sit as an "arbitral board[] ruling on the strength of the 'cause' for the [adverse employment action]. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is

16

discrimination." *Keller,* 130 F.3d at 1109. Moreover, a plaintiff can survive summary judgment by proffering "admissible evidence[ ] that the employer's articulated reason was not merely wrong, but that it was so plainly wrong that it cannot have been the employer's real reason," or by "pointing to evidence in the record which allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Jones*, 198 F.3d at 413. In the instant matter, Plaintiff has presented no evidence that the scores assigned to him by the interviewers were a "sham," nor has Plaintiff pointed to any evidence which would allow this Court to infer that discrimination was the real reason that Plaintiff was not awarded to Director of Special Education position. *Id.* Consequently, this claim will also be dismissed.

**B.      Age Discrimination**

Plaintiff also alleges that he was denied job opportunities in the RSD based upon his age. Specifically, Plaintiff alleges that he was not awarded six jobs throughout the school district due to age discrimination: (1) Principal of Southern Middle School; (2) Principal of Northeast Middle School; (3) Director of Special Education; (4) Principal of Southwest Middle School; (5) Director of Elementary Education; and (6) Director of Secondary Education. Pl.'s Resp. to Mot. for Summ. J. at 50.

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2350 (2009) (citing 29 U.S.C. § 623(a)(1)). In *Gross*, the Supreme Court modified the burden shifting

framework in cases alleging age discrimination in violation of the ADEA.  *Id.*  The Court held

that the mixed-motive doctrine enunciated in *Price Waterhouse* is not available to a plaintiff in

an age discrimination claim and that a plaintiff must show that an employer made an adverse

employment decision because of a plaintiff's age.  *Id*. The Court held that in an age

discrimination case a "plaintiff retains the burden of persuasion to establish that age was the

'but-for' cause of the employer's adverse action."  *Id.* at 2351.

     Subsequent to *Gross*, the Third Circuit has held that the *McDonnell Douglas* framework

continues to apply in this circuit; thus, Plaintiff's claim will be analyzed under that standard.

*Smith v. City of Allentown*, 589 F.3d 684, 690-92 (3d Cir. 2009) ("*Gross,* which prohibits

shifting the burden of persuasion to an ADEA defendant, does not forbid our adherence to

precedent applying *McDonnell Douglas* to age discrimination claims).  Thus, plaintiff must show

that he: (1) is over forty years old; (2) is qualified for the position in question; (3) suffered an

adverse employment decision; and (4) was replaced by a sufficiently younger person to permit an

inference of age discrimination.  *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330

(3d Cir. 1995); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 698 (3d Cir.1995).  "[T]he prima

facie case under the *McDonnell Douglas* pretext framework is not intended to be onerous."

*Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.1995) (*citing Tex. Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

     If Plaintiff is able to establish a prima facie case, the burden then shifts to Defendant to

provide evidence that Plaintiff was not promoted to the positions at issue for reasons that are

legitimate and nondiscriminatory.  *Burdine*, 450 U.S. at 254.  This burden is deemed satisfied if

the employer introduces evidence that, taken as true, would permit the conclusion that there was

a nondiscriminatory reason for the challenged employment decision. The employer is not required to prove that this nondiscriminatory reason actually motivated the action in order to shift the burden back to the plaintiff. *Fuentes*, 32 F.3d at 763. If defendant proffers reasons that it believes are legitimate and nondiscriminatory, the burden shifts to Plaintiff to show that these reasons are pretextual. *Id.*

The standard for determining pretext was set forth by the Third Circuit in *Fuentes*. To defeat summary judgment, the plaintiff must either (i) discredit the proffered reasons, either circumstantially or directly, or (ii) adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. *Fuentes*, 32 F.3d at 764. A successful showing of pretext must "allow the factfinder reasonably to infer that each of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Id.* A plaintiff may not establish pretext by simply showing that the employer's decision was wrong or mistaken, because the main issue is whether the employer acted in a discriminatory manner. *Id.* at 165. Defendant maintains that there was a legitimate, non-discriminatory reason for not awarding any of the disputed positions to Plaintiff, and in no instance was Plaintiff denied a position based upon his age.

Plaintiff's primary argument regarding all of the positions discussed below is that he is more qualified and more experienced than any of the individuals hired for the six positions. It may in fact be true that Plaintiff's qualifications and experience exceed those of the individuals that were ultimately hired. However, this is not necessarily evidence of pretext. In attempting to discredit an employer's proffered reason for failing to promote, a plaintiff "cannot simply show

19

that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765

### 1. Principal of Southern Middle School

As discussed above, Joel T. Brigel, Jr. was appointed to the position of Principal of Southern Middle School by Superintendent of Schools Thomas Chapman pursuant to his authority to appoint school administrators. Mr. Brigel, a former Assistant Principal at Southern Middle School, was 35 years old at the time of his hiring.

I find that Plaintiff can establish a prima facie case for age discrimination in regard to this position. Plaintiff was over forty years old at the time this position was filled; he was qualified for the position; suffered an adverse employment decision; and the individual chosen for the position was sufficiently younger than Plaintiff. *Brewer*, 72 F.3d at 330.

Since Plaintiff has established a prima facie case of age discrimination, I must consider whether Defendant has advanced a "legitimate, nondiscriminatory reason" for failing to appoint Plaintiff Principal of Southern Middle School. *McDonnell Douglas*, 411 U.S. at 802. As discussed above, Defendant's proffered reason for failing to award Plaintiff this position is that it was filled pursuant to the Superintendent's authority to appoint administrative positions, and the job was awarded to Brigel because he "had previously been an Assistant Principal at Southern and when its principal opening came up . . . , [School Superintendent] Chapman felt that Brigel would be a good fit to return to that school where he had previously been a highly effective Assistant Principal." *See* Def.'s Mot. for Summ. J.. at 12.

I find that Defendant has presented evidence that would permit the conclusion that there

was a non-discriminatory reason for the challenged employment decision. *Fuentes*, 32 F.3d at 763. As noted above, in order to defeat a motion for summary judgment a plaintiff must either discredit the employers preferred reasons or adduce evidence that discrimination was more likely than not a motivating or determinative cause for the employers challenged action. *Fuentes*, 32 F.3d at 764. Plaintiff has neither discredited the proffered reasons, nor presented evidence that discrimination was more likely than not a motivating or determinative cause in not appointing him Principal of Southern Middle School. *Id.* Consequently, this claim will be dismissed.

### 2. Principal of Northeast Middle School

In May, 2007, Plaintiff learned that Alex Brown, a 32 year old African American male, was promoted to the position of Principal of Northeast Middle School. Pl.'s Resp. to Mot. for Summ. J. at 8. RSD posted this position and conducted interviews, but Plaintiff did not apply for this position, and did not participate in the interview process. *Id.*

This position was also filled by Superintendent Chapman pursuant to his transfer authority. In this instance, the RSD conducted interviews in 2006, and determined that none of the candidates were suitable for the position. Brown, the eventual appointee, was placed in the position of vice-principal of Northeast Middle School. The next year, additional interviews were conducted to try to find a suitable candidate to fill the position. Again, Plaintiff did not apply for this position, nor was he part of the interview process. Again, RSD determined that none of the candidates were suitable. Thereafter, School Superintendent Chapman transferred Brown into the position of Principal of Northeast Middle School subject to his authority to transfer personnel in administrative positions.

I find that as to this position, Plaintiff cannot establish a prima facie case for age

discrimination. Plaintiff can establish three of the four required elements, but he cannot establish that he suffered an adverse employment decision in relation to this job. *Brewer*, 72 F.3d at 330. Although courts have generally held that the failure to formally apply for a job opening will not bar a plaintiff from establishing a prima facie claim of discriminatory hiring, the plaintiff must show that he made every reasonable effort to convey his interest in the job to his employer, was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or had a genuine and real interest in the position but reasonably believed that a formal application would be futile. *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1414 (3d Cir.1990); *Lula v. Network Appliance, Inc.,* 245 Fed.Appx. 149*,* 152 (3d Cir. 2007); *E.E.O.C. v. Metal Service Co.,* 892 F.2d 341, 348 (3d Cir. 1990)*.* I conclude that Plaintiff did not meet the requirements to overcome his failure to formally apply for the Principal position at Northeast Middle School.

Plaintiff argues that he expressed his interest in this position to "Douglas Kaufman, the Secretary of the Reading School Board, as well as other board members." Pl.'s Resp. to Mot. for Summ. J. at 28. Plaintiff further states that "it was well known throughout the Reading School District that [he] was interested in promotional opportunities" and that he had "repeatedly express[ed] a desire to advance." *Id.* However, the fact that Plaintiff expressed interest to a member of the board and asserts that it was "well known" within the school district that he was seeking advancement does meet the standard of making "every reasonable effort to convey his interest in the job to his employer." *Newark Branch, NAACP*, 907 F.2d at 1414. This is particularly so in the instant matter considering the fact that this position was posted on two separate occasions and a lengthy interview process, a process that Plaintiff is familiar with, was

conducted on two separate occasions. Plaintiff does not allege that Defendant ever deterred him

from applying for this position or any position within the school district, nor has Plaintiff

presented any evidence that he expressed a genuine or real interest in this position beyond a

general assertion that he was interested in promotional opportunities. *Id.* Consequently, as

Plaintiff cannot establish that he suffered an adverse employment decision in relation to this job

this claim will be dismissed. *Brewer*, 72 F.3d at 330.

### 3.      Director of Special Education

As discussed above, Plaintiff applied for the position of Director of Special Education,

but was not selected for the position. Mark McIntyre, a 44 year old candidate, was awarded the

position. As discussed above, Defendant's declined to award this position to Plaintiff because

Plaintiff performed  poorly during his interview, and lacked current knowledge related to special

education and more specifically IDEA. Thus, based upon the interviewers' scoring, Plaintiff was

not the best applicant for the position.

For the same reasons that I conclude that Defendant did not deny Plaintiff this position

based upon race discrimination, I also find that Defendant did not deny Plaintiff this position

based upon age discrimination. As discussed above, Plaintiff has not presented sufficient

evidence to raise a genuine issue of fact as to whether Defendant's preferred reasons for not

awarding him this position were not its true reasons and this claim will be dismissed. *Stewart*,

120 F.3d at 433.

### 4.      Principal of Southwest Middle School

Plaintiff applied for the position of Principal of Southwest Middle School in early July

2007. Plaintiff was not awarded this position, and the position was ultimately awarded to

Michelle Wiley, a 52 year old African American female.

I find that Plaintiff cannot establish a prima facie case for age discrimination in regard to this position. Although Plaintiff can establish the first three elements, he has adduced no evidence to support the contention that this position was awarded to a sufficiently younger person to permit an inference of age discrimination. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (plaintiff must show a sufficient age difference between himself and his replacement such that a fact-finder can reasonably conclude that the employment decision was made on the basis of age). Plaintiff was 57 years old at the time he applied for this position; Wiley was only 5 years younger at 52 when she was awarded this position. Although a 5-year difference in age has held to be sufficient to make out a prima facie case for age discrimination, the "central focus of the prima facie case is whether [the employer] treated some people less favorably than others." *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir.1999).

Moreover, even assuming that Plaintiff could make out a prima facie case of age discrimination, Plaintiff has not otherwise come forward with evidence sufficient to defeat summary judgment. Evidence of record establishes that Plaintiff was interviewed by Director of Human Resources Anthony Georeno, and Director of Curriculum Stella Leonti. *See* Employment Interview Rating Form, attached as Def.'s Ex. "R ". The rating forms completed by the interviewers show that Plaintiff received a score of 6 out of 10 from Georeno, and 7.4 out of 10 from Leonti. *Id.* Wiley received scores of 8.3 from Georeno, and 9.4 from Leonti *Id.*

Georeno noted on his form that Plaintiff "did not look at NLCB[6] stats or improvement plan." *See* Employment Interview Rating Form, attached as Def.'s Ex. "R "; Georeno Dep. at 89.

---

[6] NLCB is an acronym that refers to No Child Left Behind.

Goreno also testified that Wiley's strength as a candidate was her "experience in curriculum instruction, curriculum writing to bring this underperforming middle school up to where they needed to be." *Id*. at 92.

Leonti noted that Wiley was "an excellent candidate" and that her "experience is exactly what we need for this position." *See* Leonti Employment Interview Rating Form, attached as Def.'s Ex. "R ". Leonti stated that she did not feel that Plaintiff was the best candidate for this position because during the interview he was "unable to provide a detailed explanation of the anchors and eligible content for reading and mathematics as it relates to middle school instructional delivery." *See* Letter of Stella Leonti, attached as Resp't Ex. "F". Leonti further stated that Plaintiff's responses during the interview lacked "in-depth knowledge" and failed to give a detailed explanation for school improvement and how a plan would be developed, implemented and monitored. *Id.*

Plaintiff has not shown a sufficient age difference between himself and Wiley such that a such that a factfinder could conclude that the RSD decision to offer this position to Wiley was made on the basis of age. *Sempier*, 45 F.3d at 729. Moreover, even if Plaintiff were able to establish a prima facie case of age discrimination, he has not presented evidence that Defendant's reasons for selecting Wiley for this position are pretextual or that age was the "but for" causation for this decision. *Id.*; *Gross*, 129 S.Ct. at 2351. As a result, Plaintiff has not presented evidence sufficient to permit an inference of age discrimination, and this claim will be dismissed.

### 5. Director of Elementary Education

Plaintiff next asserts that he was denied the position of Director of Elementary Education based upon his age. This position was awarded to Eric Turman, a 36 year old African American

male, in July 2007.

Turman had previously been a Vice Principal and Principal in the RSD and initially applied for the position of Director of Secondary Education. However, at that time, RSD was also interviewing for the position of Director of Elementary Education, and Turman was asked to interview for that position as well. After reviewing the scores of the candidates for both positions, RSD made the determination that Turman was the best choice for a Director position. RSD determined that he was a better fit for the Director of Elementary Education position rather than the Director of Secondary Education position, and thus offered him that position instead.

The Employment Interview Rating Form's indicate that Plaintiff was interviewed on July 19, 2007. *See* Employment Interview Rating Form, attached as Def.'s Ex. " " Plaintiff was interviewed by School Superintendent Thomas Chapman, Director of Human Resources Anthony Georeno, and Director of Secondary Education Stella Leonti. *Id.* The rating forms completed by the interviewers show that Plaintiff received a score of 5.2 out of 10 from Chapman, 5.4 out of 10 from Georeno, and 5.2 out of 10 from Leonti for a total of score 15.8. *Id.* Turman received scores of 7.2 from Chapman, 7.2 from Georeno, and 8.1 from Leonti for a total of 22.5. *Id.*

Chapman testified that he did not believe that Plaintiff was the best candidate for this position because he did not have "enough understanding of the educational processes, educational instruction, educational goals." Chapman Dep. at 116. Chapman related that he felt that Plaintiff would be more comfortable and more effective in a secondary school setting. *Id.* Finally, Chapman testified that he didn't "feel that [Plaintiff] had a grasp of instruction at the elementary level, content at the elementary level," and that his attitude during the interview indicated a lack of interest in the position. *Id.* at 117-18.

Georeno stated that Plaintiff was not selected for this position "because of his lack of enthusiasm, lack of vision for the division, or any plan to move forward. He did not present evidence of any elementary experience or any working knowledge of the current NCLB status of any of [RSD's] 14 elementary schools. He did not exhibit any working knowledge of any curriculum standards or anchors for the elementary level. He again seemed to project a sense of entitlement to the position based on his certification and credentials." See Notes of Anthony Georeno attached as Resp.'s Ex. "F".

Leonti stated that she did not select Plaintiff for this position based upon the fact that he "did not present evidence of elementary classroom experience. He was unable to provide a detailed explanation on the anchors or eligible content of elementary instruction as it relates to reading and mathematics instruction. He implied that his certification and credentials spoke to his qualifications for the position. I needed to hear [more] in depth knowledge in his answers. See Letter of Sandra Leonti, attached as Resp't Ex. "F".

Again, however Plaintiff has not presented evidence that Defendant's reasons for selecting Turman for this position are pretextual or that age was the "but for" causation for this decision. *Id.*; *Gross*, 129 S.Ct. at 2351. Although Plaintiff believes that he should have been awarded this position based upon his qualifications and experience, a plaintiff may not defeat summary judgment "by simply showing that the employers decision was wrong or mistaken." *Fuentes*, 32 F.3d at 764.

### 6.    Director of Secondary Education

Finally, Plaintiff applied for the position of Director of Secondary Education in July 2007. The applicant selected for this position was Robin R. Laysears-Smith, a 47 year old

African American female.

Defendant states that Laysears-Smith was chosen over Plaintiff because she had performed better during her interview, and was an overall stronger candidate than Plaintiff. Specifically, Defendant asserts that Plaintiff performed poorly at his interview "by not demonstrating a comprehensive knowledge of the state curriculum standards or anchors and by failing to present a vision or a plan for that division of RSD." Def.'s Mot. for Summ. J. at 28.

The Employment Interview Rating Form's indicate that Plaintiff was interviewed on July 10, 2007. *See* Employment Interview Rating Form, attached as Pl.'s Ex. "O ". Plaintiff was interviewed by School Superintendent Thomas Chapman, Director of Human Resources Anthony Georeno, and Director of Secondary Education Stella Leonti. *Id.* The rating forms completed by the interviewers show that Plaintiff received a score of 6.0 out of 10 from Chapman, 6.0 out of 10 from Georeno, and 5.3 out of 10 from Leonti for a total of score 17.3. *Id.* Laysears-Smith received scores of 7.2 from Chapman, 8.2 from Georeno, and 6.7 from Leonti for a total of 22.1. *Id.*

Georeno testified that Plaintiff was not selected for this position because "he did not exhibit a comprehensive knowledge of the State curriculum standards or curriculum anchors." He was not fully aware of the AYP system and bench marking process. He also exhibited the same lack of enthusiasm as in previous interviews. He presented no vision or plan for the division. His responses seemed to convey a sense of entitlement to the position. See Letter of Anthony Georeno, attached as Resp't Ex. "F".

Leonti stated that she did not select Plaintiff for this position because "[h]e was unable to provide a detailed explanation on the anchors or eligible content of secondary mathematics as it

relates to instructional delivery. He did not provide a detailed explanation on how to develop a NCLB school improvement plan and what action steps should be followed in monitoring that plan. He implied that his certification and credentials spoke to his qualifications for the position. I needed to hear [more] in depth knowledge in his answers. *See* Letter of Sandra Leonti, attached as Resp't Ex. "F".

Since Plaintiff cannot point to evidence discrediting the RSD's proffered legitimate reason for failing to promote him, he cannot satisfy the first prong of the *Fuentes* analysis. Therefore, Plaintiff has failed to satisfy his burden of production under the *McDonnell Douglas* analysis, and this claim will be dismissed.

### C. Retaliation

In addition to his race and age discrimination claims, Plaintiff also alleges that he was subject to unlawful retaliation after filing a complaint with the PHRC in 2000. The PHRC complaint alleged that the RSD impermissibly attempted to reduce the amount of his compensation based upon race. The 2000 PHRC claim was resolved amicably by the parties without a ruling from PHRC. (Plaintiff Dep. at 23-24). However, Plaintiff maintains that the fact that he filed the complaint has caused the RSD to engage in "a pattern of antagonism against [him] during his tenure by consistently denying him promotional opportunities while promoting younger, less qualified individuals." Pl.'s Resp. to Mot. for Summ J. at 39.

Plaintiff's retaliation claim is also governed by the *McDonnell Douglas* burden-shifting framework. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir.1997); *see also Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir.2005) (noting that in the absence of direct evidence of retaliation, retaliation claims under the ADEA and the PHRA ordinarily proceed under the

*McDonnell Douglas* framework).  To advance a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) the employer took a "materially adverse" employment action; and (3) a causal connection exists between the employee's protected activity and the adverse employment action.  *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir.2006); *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997);  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.2007).

If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997).  The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Id.* at 500-501 (*quoting Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n. 2 (3d Cir.1997).

If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. *Krouse*, 126 F.3d at 501; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) ("It is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.").  The plaintiff must prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.  *Woodson v. Scott Paper Co.*, 109 F.3d at 931-35.  The burden of proof remains at all times with the plaintiff.  *Id.* at 920 n.2.

In this case, there is insufficient evidence to support a prima facie case of discriminatory

retaliation. Plaintiff satisfies the first element, in that the filing of his complaint with the PHRC is an activity protected by Title VII. Plaintiff also satisfies the second element, because the failure to award him any of the six positions at issue constitutes a "materially adverse" employment action. However, in order to establish a prima facie case for retaliation, Plaintiff must also demonstrate a causal connection between his protected activity and the adverse employment action.

To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See Krouse*, 126 F.3d at 503-04; *Woodson*, 109 F.3d at 920-21. In assessing a causal connection, a reviewing Court must consider "the specific facts and circumstances encountered." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n. 5 (3d Cir.2000). Evidence probative of a causal link can be inferred from evidence "gleaned from the record as a whole." *Id.* at 281.

In the instant matter, Plaintiff does not argue that there is an unusually suggestive temporal proximity between the filing of his complaint with the PHRC and his failure to be promoted to the positions at issue. Plaintiff filed his complaint with the PHRC in June 2000, and all of the jobs at issue in the instant matter were awarded in 2007. Thus, there was nearly 7 years between the filing of the PHRC complaint and Plaintiff's first failure to be promoted. As a result, Plaintiff can not show temporal proximity. *Krouse*, 126 F.3d at 503-04. Plaintiff argues, however, that the RSD has engaged in a pattern of antagonism toward him that has resulted in a consistent denial of promotional opportunities. Pl.'s Resp. to Mot. for Summ. J. at 39. Unfortunately, Plaintiff presents no evidence to establish that the RSD engaged in retaliation

31

when it denied him the six job opportunities at issue in the instant matter. To be sure, Plaintiff presents his belief that he has been retaliated against. Plaintiff speculates that people within the RSD knew about his PHRC complaint and must have discussed it with others in the school district, but this speculation is not evidence. Moreover, none of the people involved with or aware of Plaintiff's initial PHRC complaint were in a position with decision making authority within the RSD at the time the jobs at issue in the instant matter were awarded. There is nothing to suggest any link between Plaintiff's PHRC filing in 2000, and the job actions at issue in this case.

More significantly, Plaintiff fails to establish that any of the decision makers or any of the evaluators of his qualifications even knew that he had filed a complaint with the PHRC in 2000. School Superintendent Chapman was hired by the RSD in 2005, five years after Plaintiff had filed his first complaint with the PHRC. Chapman Dep. at 11. Chapman had no knowledge of the PHRC complaint filed by Plaintiff in 2000, until Plaintiff filed the instant action and associated PHRC complaint in 2008. *Id.* at 13-14. Chapman only became aware of Plaintiff's first complaint while engaged in discussion regarding the instant matter. *Id.* Chapman could not recall who told him about the initial complaint. *Id.*

Director of Human Resources Anthony Georeno was hired by the RSD in January 2006, six years after Plaintiff filed his initial complaint with the PHRC. Georeno Dep. at 12. Georeno had never met Plaintiff before being hired by the RSD. *Id.* at 12-13. Georeno became aware of Plaintiff's first PHRC complaint when Plaintiff mentioned it during his interview for either Director of Special Education or Director of Secondary Education. *Id.* at 61-63.

Reading School Board member Karen McCree was elected to the Board in 1999. McCree

Dep. at 11. McCree, who was a member of the Board at the time Plaintiff filed his initial PHRC complaint, testified that she had no knowledge of a complaint having ever been filed by Plaintiff with the PHRC and that the Board was never informed of such a complaint. McCree Dep. at 55-57.

Q. When you say things that happened, do you mean [Plaintiff's] prior PHRC complaint?

A. I don't know about those complaints.

* * *

Q. Were those things that [Plaintiff] felt were discriminatory?

A. Yes

Q. The things he raised a complaint with the school district about being discriminatory?

A. I never heard of a complaint at that particular time.

Q. But you weren't on the Board at that time.

A. Yes, I was.

Q. You were?

A. Yes.

Q. You did not hear the complaint?

A. No, he never filed a complaint. This is the first complaint I'm aware of.

Q. The district superintendent at that time never let you know about a prior complaint that [Plaintiff] had?

A. No.

Q. They didn't inform you of it?

A. No.

McCree Dep. at 55-57.

Keith Stamm was elected to the Reading School Board in 2003. Stamm Dep. at 8. Stamm testified that he did not know about Plaintiff's initial PHRC complaint. *Id.* at 6-7.

Q. Do you know whether or not [Plaintiff] was raising an issue with regard to his prior PHRC complaint?

A. No, I don't.

Q. So you didn't talk about it with Dr. Georeno?

A. No.

Q. Have you ever talked with Dr. Georeno about [Plaintiff's] prior PHRC complaint, the one that he did before the one you were on the school board?

A. No.

Plaintiff cannot defeat Defendant's motion for summary judgment by merely asserting that the decisionmakers in the RSD must have known about his prior complaint to the PHRC. Plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. at 256-57. There is no evidence that anyone in a decision making role with the RSD knew of Plaintiff's complaint to the PHRC and held this fact against him in denying him opportunities within the school district. Therefore, the evidence shows no connection between Plaintiff's PHRC filing and the decision to award the jobs at issue to other individuals. Absent such a connection, there can be no retaliation under Title VII. Accordingly, this claim must be dismissed.

## V.   CONCLUSION

Controlling Supreme Court and Third Circuit precedent mandate the entry of summary judgment in favor of Defendants as to all claims.  The evidence is simply insufficient to allow this case to proceed to a jury trial.   Accordingly, the Court grants summary judgment in favor of Defendant and against Plaintiff as to all claims.  An appropriate Order follows.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI,
UNITED STATES MAGISTRATE JUDGE